e

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT D. ANDERSON,

            Plaintiff,

     v.

J. FERGUSON,

            Defendant.

Case No.  20-cv-04368-HSG

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM; STAYING ACTION; DIRECTIONS TO CLERK**

Re: Dkt. No. 30

Plaintiff, an inmate at Correctional Training Facility ("CTF"), filed this *pro se* action pursuant to 42 U.S.C. § 1983 against CTF supervising cook Ferguson.  Now pending before the court is defendant Ferguson's motion to dismiss and for summary judgment.  Dkt. No. 30. Plaintiff has filed an opposition, Dkt. No. 34, and defendant Ferguson has filed a reply, Dkt. No. 37.  For the reasons set forth below, the Court GRANTS defendant Ferguson's motion to dismiss and GRANTS defendant Ferguson's motion for summary judgment.

**FACTUAL BACKGROUND**

**I.      Operative Complaint**

In relevant part, the operative complaint alleges that, on August 26, 2019, defendant Ferguson sexually assaulted Plaintiff by forcing Plaintiff's face into his groin.  *See generally* Dkt. No. 14; *see also* Dkt. No. 17 at 2.  When Plaintiff went to speak to defendant Ferguson about the incident later that day, defendant Ferguson again pulled Plaintiff's face down to his groin.  *See generally* Dkt. No. 14; *see also* Dkt. No. 17 at 2.  Several months later, on March 22, 2020, defendant Ferguson again sexually harassed Plaintiff, this time by rubbing up against him.  *See*

*generally* Dkt. No. 14; *see also* Dkt. No. 17 at 3.  The Court found that these allegations stated a cognizable Eighth Amendment claim and a cognizable state law claim for sexual harassment and battery.  *See generally* Dkt. No. 17.

## II.    Deposition Testimony

Plaintiff was deposed on April 23, 2021.  In the excerpts provided of his deposition testimony, Plaintiff stated the following.

During the relevant time period, Plaintiff was employed in the CTF Trade Facility dining facility as a back dock worker, and was expected to unload the tracks and clean the food carts.

There were two interactions on August 26, 2019.  In the first interaction, Plaintiff was bent over at the waist tying his shoe with his back to the door.  Defendant Ferguson suddenly stepped in front of him.  Plaintiff tried to stand up and defendant Ferguson grabbed Plaintiff's head and held it close to his groin for 30 to 45 seconds.  Defendant Ferguson simulated that he was receiving oral copulation from Plaintiff.  Plaintiff tried to stand up, but defendant Ferguson continued to attempt to force Plaintiff's face into his groin.  Defendant Ferguson's grip was strong enough to restrain Plaintiff.  Plaintiff's face was approximately three to four inches from defendant Ferguson's groin.  Defendant Ferguson finally let go after Plaintiff tried to shake himself loose.  Defendant Ferguson laughed and walked off with some of the inmate workers.  Plaintiff was "freaked out" by the event.  Dkt. No. 1 at 15-16; Dkt. No. 30-2 at 1-10.  In the second interaction, defendant Ferguson tapped Plaintiff on the shoulder and attempted to grab Plaintiff's head, but Plaintiff jerked out of the way.  Defendant Ferguson had a less than five second contact with Plaintiff's head and Plaintiff's head did not make contact with defendant Ferguson's groin.  Defendant Ferguson then said, "Bitch, it's gonna be okay," and took off laughing.  Dkt. No. 1 at 14-16; Dkt. No. 30-2 at 10-12.  Plaintiff filed a government claim regarding this incident.  Dkt. No. 30-2 at 15-16.  Plaintiff sought mental health services to cope with the events and filed a Prison Rape Elimination Act complaint against defendant Ferguson. Dkt. No. 1 at 16-18.

Plaintiff describes the March 22, 2020 incident as follows.  Plaintiff was on the assembly line for the cell feeding, serving eggs.  Defendant Ferguson brushed up against Plaintiff for a few

2

United States District Court
Northern District of California

seconds and then stood right behind Plaintiff. Plaintiff stopped what he was doing. Correctional officer Figueroa asked, "You all right?" Plaintiff replied, "Man, that dude, I just file a PREA complaint on that dude and he just rubbed up against me and stood behind me like it's okay." Officer Figueroa asked Plaintiff what he wanted officer Figueroa to do. Plaintiff responded, "Look, I'm gonna go and find something else to do." Officer Figueroa told him to go find something else to do. Dkt. No. 30-2 at 12-14. Plaintiff did not file a government claim regarding this incident. Dkt. No. 30-2 at 15-16.

### III.    Government Claims Act Claim

On September 18, 2019, Plaintiff filed a claim with the State of California regarding the August 26, 2019 encounter with defendant Ferguson. Dkt. No. 30-1 at 1-19. On November 11, 2019, the California Department of General Services ("DGS") informed Plaintiff that his claim "involve[d] complex issues . . . beyond the scope of analysis and legal interpretation typically undertaken by the [Government Claims Program]," and declined to make a determination regarding the merits of his claim. The DGS rejected Plaintiff's claim and informed him that he could initiate court action if he so wished. Dkt. No. 30-1 at 21.[1]

### IV.    CDCR Administrative Grievance Process

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates with the following administrative remedies, also

---

[1] Defendant Ferguson requests that the Court take judicial notice of the Government Claim Form submitted by Plaintiff related to the August 26, 2019 incident (Claim No. 19008590), and the November 1, 2019 rejection letter from the California Department of General Services in connection with Claim No. 19008590, attached as Exhibits A and B to defendant Ferguson's request for judicial notice. Dkt. No. 30-1. The Court GRANTS this request because these documents are public records relevant to defendant Ferguson's motion and because these documents are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b) ("court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court "may take judicial notice of . . . matters of public record"); *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) (taking judicial notice of filing date and content of tort claims and their rejection by county, on grounds that the "documents are matters of public record and sets forth facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned'"); *Navarro v. City of Alameda*, No. 14-cv-1954-JD, 2014 WL 4744184, at *2 (N.D. Cal. Sept. 22, 2014) (taking judicial notice of California government claim documents because they are official records).

referred to as the administrative grievance process.[2]  The CDCR provided its inmates the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety or welfare." 15 Cal. Code Regs. § 3084.1(a).  Grievance issues are separated into two categories: custody issues and healthcare issues.

To grieve a custody issue, a prisoner submits his complaint on a CDCR Form 602 and describes the specific issue being grieved and the relief requested.  15 Cal. Code Regs. § 3084.2(a) (2018).  The prisoner must state all facts known and available to him regarding the issue being appealed at the time of submission; and list all staff members involved and describe their involvement in the issue.  15 Cal. Code Regs. § 3084.2(a)(1), (4) (2018).  To exhaust available administrative remedies for custody grievances, a prisoner must have his grievance proceed through three levels of review: (1) first formal level filed with one of the institution's appeal coordinators, (2) second formal level filed with the institution head or designee, and (3) third formal level filed with the CDCR director or designee.  15 Cal. Code Regs. § 3084.7 (2018).  Pursuing a grievance through the third and final level satisfies the exhaustion requirement set forth in 42 U.S.C. § 1997e(a).  15 Cal. Code Regs. § 3084.1(b) (2018).

## V.     Grievance CTF-19-3053

On September 8, 2019, Plaintiff submitted Grievance CTF-S-19-0353 regarding the August 26, 2019 incident.  Dkt. No. 1 at 61-64.  The grievance was processed as a staff complaint. On September 16, 2019, a second level response was issued, stating that the issue had been referred for a Prison Rape Elimination Act ("PREA") investigation and that the grievance was separately pending review by the Investigative Services Unit ("ISU").  Dkt. No. 1 at 71-72.  On October 28, 2019, a staff complaint response was issued, with the conclusion that there was no

_____

[2] The regulations that set out the features of the administrative grievance process for California prisoners underwent a substantial restructuring in 2020.  On March 25, 2020, and effective June 1, 2020, California Code of Regulations, Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  Because the alleged incidents took place prior to June 1, 2020, the current administrative grievance process does not apply to Plaintiff's claims.  All the citations in this order to the California regulations are to the regulations in place during the period relevant to this action, rather than to the current regulations.

United States District Court
Northern District of California

1   violation of prison policy.  Dkt. No. 1 at 75.  On October 30, 2019, the ISU concluded its review

2   and issued a finding that Plaintiff's allegations of a PREA violation were unsubstantiated.  Dkt.

3   No. 1 at 76.  On January 13, 2020, a third level decision was issued, denying the grievance on the

4   grounds that the second level review had properly referred the matter for a PREA investigation.

5   Dkt. No. 1 at 77.  The third level decision specified that Plaintiff's administrative remedies were

6   exhausted.

**DISCUSSION**

7

8   I.   **Motion to Dismiss**

9        A.   **Legal Standard**

10       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's

11  complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Under the "notice pleading"

12  standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a short and

13  plain statement of the plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *see*

14  *also Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

15       "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal

16  theory or (2) insufficient facts under a cognizable legal claim."  *SmileCare Dental Grp. v. Delta*

17  *Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint

18  will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is

19  plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

20       In making this determination, a court reviews the contents of the complaint, accepting all

21  factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party.

22  *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir.

23  2007).  Notwithstanding this deference, the reviewing court need not accept as true conclusory

24  allegations that are contradicted by documents referred to in the complaint, *Paulsen*, 559 F.3d at

25  1071, and need not accept as true legal conclusions cast in the form of factual allegations, *see*

26  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is also improper for a court to assume "the

27  [plaintiff] can prove facts that [he or she] has not alleged."  *Assoc. Gen. Contractors of Cal., Inc.*

28  *v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  However, "[w]hen there are well-

United States District Court
Northern District of California

1   pleaded factual allegations, a court should assume their veracity and then determine whether they

2   plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. "In sum, for a complaint to

3   survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from

4   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S.*

5   *Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) (quotations and citation omitted).

6        In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally

7   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

8   matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506

9   F.3d 895, 899 (9th Cir.2007) (citation and quotation marks omitted).

10        **B.      Government Claims Act**

11        Pursuant to the California Government Claims Act, no tort claim against a state public

12   entity or its employees for money or damages may be brought until the claim has been presented

13   to the state for review and the state issues a notice rejecting the claim. Cal Gov't Code. § 900 *et*

14   *seq.* After a claim is rejected, an individual has six months from the date the notice is deposited in

15   the mail to file a court action. Cal. Gov't Code § 945.6. "Timely claim presentation is not merely

16   a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action

17   against defendant and thus an element of the plaintiff's cause of action." *Shirk v. Vista Unified*

18   *Sch. Dist.*, 42 Cal.4th 201, 209 (Cal. 2007) (citations omitted). The obligation to comply with the

19   Government Claims Act is independent of the obligation to exhaust administrative remedies

20   pursuant to the Prison Litigation Reform Act. *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376

21   (Cal. Ct. App. 2013); *see also Martinez v. Tilton*, 2013 WL 5670869, *3 (E.D. Cal. 2013) ("the

22   prison's inmate appeals process and the Government Claims Act process are separate processes

23   and there is no support for a finding that the allegedly improper cancellation of Plaintiff's inmate

24   appeal had any effect whatsoever on his ability to timely present his Government Claims Act

25   claim."). Accordingly, an inmate's state law claims are subject to dismissal for failure to state a

26   claim if the inmate does not "allege facts demonstrating or excusing compliance with the claim

27   presentation requirement." *Calif. v. Sup. Ct.*, 32 Cal. 4th 1234, 1237, 1239 (2004).

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

1   **C.      Analysis**

2          Defendants argue that Plaintiff's state law claims should be dismissed because he failed to

3   comply with the requirements of the Government Claims Act as follows.  With respect to the

4   August 26, 2019 incident, this action is untimely because Plaintiff commenced this action on or

5   about June 30, 2019, more than six months after he received the rejection notice.  With respect to

6   the March 22, 2020 incident, Plaintiff did not file a claim with the State of California.  Dkt. No. 30

7   at 16-18.

8          Plaintiff acknowledges that he did not file a claim regarding the March 22, 2020 incident.

9   *See* Dkt. No. 30-2 at 15-16.

10         With respect to the August 26, 2019 incident, Plaintiff argues that he has complied with the

11  Government Claims Act because he presented a claim, Claim No. 19008590, and because he

12  received a reply on November 1, 2019.  He further argues that his claim was not rejected,

13  presumably implying that the six-month time filing period was not triggered by the November 1,

14  2019 reply because the reply was not a rejection.  He also argues that there is proof of defendant

15  Ferguson's violation of the Eighth Amendment, as evinced by the numerous complaints against

16  him, resulting in a Skelly hearing, and Plaintiff's correspondence with various state entities

17  reporting defendant Ferguson's behavior.  ECF No. 38 at 2-3.

18         Here, the record is clear that Plaintiff did not comply with the Government Claims Act's

19  requirement that he file suit within six months of receiving the rejection notice.  The November 1,

20  2019, notice clearly states that the claim was rejected: "Government Claims Program (GCP) staff

21  completed its investigation of your claim and rejected it for the following reasons."  Dkt. No. 1 at

22  79.  The notice also warned Plaintiff about the six-month filing deadline: "Subject to certain

23  exceptions, you have only six (6) months from the date this notice was personally delivered or

24  deposited in the mail to file a court action on this claim.  See Government Code Section 945.6."

25  Because the claim was rejected on November 1, 2019, Plaintiff had until May 1, 2020, to file a

26  court action on his state law claims of sexual assault and battery arising out of the August 26, 2019

27  incident.  This action, filed on or about June 30, 2020, is untimely.  Whether Plaintiff has

28  complied with the Government Claims Act is a threshold issue that must be resolved before the

7

1    Court can proceed to the merits of Plaintiff's state law claims.  Therefore, for the purposes of

2    determining whether Plaintiff timely filed this action, the Court cannot consider whether defendant

3    Ferguson committed a constitutional violation.  The Court GRANTS the motion to dismiss with

4    respect to the state law claims.

5    **II.    Motion For Summary Judgment**

6            Defendant Ferguson argues that that he is entitled to summary judgment for the following

7    reasons.  First, defendant Ferguson argues that he is entitled to summary judgment with respect to

8    the claim arising out of the March 22, 2020 incident because Plaintiff did not exhaust his

9    administrative remedies for this claim as required by the Prison Litigation Reform Act ("PLRA")

10   in that he filed no grievance regarding this incident.  Second, defendant Ferguson argues that he

11   did not violate the Eighth Amendment because the alleged contact was merely unprofessional,

12   lasted less than a minute, and was not sexual in nature or repugnant to the conscience of mankind.

13   Finally, defendant Ferguson argues that he is entitled to qualified immunity.  ECF No. 30.

14           In his opposition (Dkt. No. 36), Plaintiff argues that Defendant Ferguson failed to produce

15   grievances about him that resulted in a *Skelly* hearing; failed to notify him of the motion to dismiss

16   and for summary judgment in accordance with the Federal Rules of Civil Procedure; was sued in,

17   and settled, a separate civil case; is liable under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 1988;

18   violated 42 U.S.C. § 8:13 harassment in the course of employment, acting under color of state law

19   and federal law; violated Plaintiff's procedural rights in violation of Cal. Gov't Code §§ 818,

20   955.4a, 970.4; violated Cal. Penal Code § 415(d)(3); violated Plaintiff's due process rights under

21   the Fifth Amendment; and caused irreparable harm to Plaintiff's life, liberty and property, while

22   also demeaning, humiliating, embarrassing, slandering and sexually assaulting Plaintiff.  Plaintiff

23   also attaches declarations from various inmates alleging that they have suffered the same kind of

24   sexual harassment from defendant Ferguson.  *See generally* Dkt. No. 36

25           In his surreply (Dkt. No. 38),[3] Plaintiff argues that he has not received any of the moving

26

27   ────────────────

     [3] Plaintiff titled Dkt. No. 38 "Plaintiff's reply in support of motion of motion to cross-move for
     summary judgment."  Dkt. No. 38 at 1.  The Court construes Dkt. No. 38 as a surreply because
28   Plaintiff did not file a cross-motion for summary judgment.  While Plaintiff did file a pleading
     titled "Plaintiff's motion to cross-move for summary judgment," (Dkt No. 35), this pleading

United States District Court
Northern District of California

papers submitted by defendant Ferguson and is therefore unaware of the arguments set forth in the

motion to dismiss and for summary judgment, and that he was not notified of the moving papers

as required by Fed. R. Civ. P. 56.  He acknowledges receiving defendant Ferguson's reply in

support of his moving papers.  He argues that he exhausted available administrative remedies, but

does not identify specific grievances.  Dkt. No. 38 at 3.  He also argues that non-consensual

inappropriate touching and propositioning is unlawful and violates the Eighth Amendment,

regardless of the situation.  He further argues that the touching was sexual in that defendant

Ferguson cupped Plaintiff's head and pulled Plaintiff's head towards his groin and said, "It's okay

bitch."  Plaintiff reports that he "suffers from unnecessary rigor when subject to unreasonably

harsh, strict, severe treatment.  Being unnecessary [sic] exposed to an increased risk of serious

harm violation the prohibition of unnecessary rigor arising from treatment that is clearly excessive

or deficient and unjustified."  Dkt. No. 38 at 4.  Plaintiff also references the Protection and

Advocacy for Individuals with Mental Illnesses Act ("PAMII"), saying that it concludes that if

incidents are reported to the system, there is probable cause that the incidents occurred.  Finally,

Plaintiff cites to seven out-of-circuit cases.  He describes *McLarin v. Prater*, 30 F.3d 982, 989 (8th

Cir. 1994), as holding that pain is sufficient injury to allow for recovery under the Eighth

Amendment, and does not explain why he has cited the remaining cases.  *See generally* Dkt. No.

38.  Plaintiff attaches to the surreply various correspondence he has received from different state

agencies in response to his reporting defendant Ferguson's behavior.  Dkt. No. 38 at 6-13.

---

is not a cross-motion for summary judgment.  Dkt. No. 35 is a two-sentence pleading requesting
that the Court allow Plaintiff to cross-move for summary judgment under Fed. R. Civ. P 56 "as to
the liability of defendant[s] California Department of Correction, et al., for damages for denial to
the plaintiffs due process of law.  The reasons therefore are set in the plaintiffs declaration and
briefs in support of this motion."  Dkt. No. 35 at 1 (sic).  The other pleading filed that same day,
Dkt. No. 36, cannot be construed as the cross-motion for summary judgment or the supporting
declaration and briefs because it is clearly titled "Plaintiff's Opposition to Defendants Motion to
Dismiss and Summary Judgment" and specifically requests that the Court "deny Defendant's
motion to dismiss and summary judgment . . ."  Dkt. No. 36 at 1.  Moreover, Plaintiff's request to
file a cross-motion for summary judgment regarding an alleged due process violation would be
outside the scope of this action.  The complaint has only stated a cognizable Eighth Amendment
claim and a cognizable claim for sexual assault and battery.  Dkt. No. 1; Dkt. No. 8.  The
complaint did not state a due process claim.  However, in the interest of justice, in resolving this
summary judgment motion, the Court has considered all the arguments raised by Plaintiff in both
Dkt. Nos. 36 and 38.

United States District Court
Northern District of California

United States District Court
Northern District of California

1        In considering the motion for summary judgment and the motion to dismiss, the Court does

2 not consider the following arguments made by Plaintiff because they are either irrelevant, outside

3 the scope of this action, or contradicted by the record.  The Court does not consider Plaintiff's

4 arguments that defendant Ferguson has a history of sexually harassing inmates, i.e. his claims that

5 defendant Ferguson has not produced grievances filed against him that resulted in a *Skelly* hearing;

6 that defendant Fergsuon was sued in, and settled, a separate civil case; and the declarations from

7 other inmates also alleging sexual assault or harassment.  This is because these claims do not

8 address the specific issues raised here: whether Plaintiff exhausted his administrative remedies

9 with respect to his claims and whether defendant Ferguson committed an Eighth Amendment

10 violation against Plaintiff on August 26, 2019 and March 22, 2020.  Plaintiff's claims that

11 defendant Ferguson has violated 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 1988; 42 U.S.C.

12 § 8:13; Cal. Gov't Code §§ 818, 955.4a, 970.4; Cal. Penal Code § 415(d)(3); the Fifth

13 Amendment, and PAMII are outside the scope of this action.  The operative complaint only

14 alleges an Eighth Amendment violation and sexual assault and battery claims.  To the extent

15 Plaintiff is seeking to sue defendant Ferguson under additional legal theories, he cannot amend the

16 operative complaint at this stage of the litigation without showing good cause.  Also, it is unclear

17 that Plaintiff can sue for violations of the specified statutes.  Some of these statutes are not

18 applicable to this action and some do not allow for private rights of action.  Plaintiff's claim that

19 defendant Ferguson did not notify him of the motion to dismiss and for summary judgment in

20 accordance with the Federal Rules of Civil Procedure is unsupported by the record.  In his

21 opposition, he specifically references the motion to dismiss and for summary judgment, indicating

22 that he received it and was aware of it.  Dkt. No. 36 at 1.  Defendant Ferguson filed the required

23 *Rand* warning along with the dispositive motion, Dkt. No. 30-3, and Plaintiff has not proffered any

24 evidence to support his claim that he did not receive the required *Rand* warning despite receiving

25 the motion itself.  The Court considers Plaintiff's remaining arguments in considering defendant

26 Ferguson's motion.

27      **A.**      **Summary Judgment Standard**

28        Summary judgment is proper where the pleadings, discovery and affidavits show that there

1    is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

2    law." *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.

3    *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

4    genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

5    party.  *See id.*

6          A court shall grant summary judgment "against a party who fails to make a showing

7    sufficient to establish the existence of an element essential to that party's case, and on which that

8    party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

9    essential element of the nonmoving party's case necessarily renders all other facts immaterial."

10   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial

11   burden of identifying those portions of the record that demonstrate the absence of a genuine issue

12   of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the

13   pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and

14   admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  *See*

15   *id.* at 324 (citing Fed. R. Civ. P. 56(e)).

16         For purposes of summary judgment, the court must view the evidence in the light most

17   favorable to the non-moving party, drawing all justifiable inferences in that party's favor.  *AXIS*

18   *Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any

19   given material fact, evidence produced by the moving party conflicts with evidence produced by

20   the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving

21   party with respect to that material fact.  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).

22   However, facts must be viewed in the light most favorable to the nonmoving party only if there is

23   a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The court's

24   function on a summary judgment motion is not to make credibility determinations or weigh

25   conflicting evidence.  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

26         **B.       PLRA Exhaustion Requirement**

27              **1.       Standard**

28         The PLRA sets forth the following exhaustion requirement: "No action shall be brought

United States District Court
Northern District of California

with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The administrative remedies need not be plain, speedy, and effective; need not satisfy minimum federal standards, and need not be capable of providing the form of relief sought. *Ross v. Blake*, 136 S. Ct. 1850, 1858, (2016) (citing to *Porter v. Nussle*, 534 U.S. 516, 524 (2002) and *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

The PLRA requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 217–18. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218.

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* at 1172. A prisoner must provide evidence, not just make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Albino*, 747 F.3d at 1172.

//

United States District Court
Northern District of California

## 2.     Analysis

It is undisputed that administrative remedies were available to Plaintiff.  Plaintiff has not met his burden of proving that he exhausted his administrative remedies with respect to the March 22, 2020 incident.  Plaintiff makes the conclusory statement that he exhausted all available administrative remedies but does not identify the grievance that exhausted this claim.  There is nothing in the record indicating that Plaintiff filed a grievance regarding the March 22, 2020 incident or that he was unable to file a grievance regarding this incident.  Accordingly, the Court GRANTS summary judgment in favor of defendant Ferguson with respect to the Eighth Amendment claim arising out of the March 22, 2020 incident for failure to exhaust administrative remedies.  Plaintiff may file a new action regarding the March 22, 2020 incident after he has exhausted his administrative remedies.

### C.     Eight Amendment Violation

#### 1.     Legal Standard

The Eighth Amendment prohibits cruel and unusual punishment in prisons.  The Supreme Court has instructed that whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The current governing Eighth Amendment jurisprudence focuses not on the extent of the alleged sexual harassment, but on whether the alleged sexual harassment had a legitimate penological purpose and was intended to sexually gratify the perpetrator or to humiliate the inmate.  *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

A review of recent Eighth Amendment jurisprudence in the area of sexual harassment and assault demonstrates the evolution and expansion of what constitutes an Eighth Amendment violation.  As early as 2000, the Ninth Circuit unequivocally held that sexual abuse of prisoners violated the Eighth Amendment:  "In the simplest and most absolute of terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse . . . " *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).  In *Schwenk*, the Ninth Circuit clarified that a correctional officer violates the Eighth Amendment by making forcible sexual contact with an

13

inmate.  In *Schwenk*, the prison guard entered the inmate-plaintiff's cell, unzipped his pants, exposed himself, demanded oral sex, and then, after being refused, grabbed the inmate (a pre-operative male-to-female transsexual), pushed the inmate up against the bars of the cell, and ground his naked penis into the inmate's buttocks.  The Ninth Circuit rejected the prison guard's arguments that the Eighth Amendment only prohibited sexual assault, and that he had only engaged in same-sex sexual harassment.  The Ninth Circuit found that the prison guard's actions violated the Eighth Amendment because the prison guard subjected the inmate to forcible sexual contact.  The Ninth Circuit further found that the prison guard was not entitled to qualified immunity because, although prior cases had addressed circumstances in which prison officials were aware of the risk of sexual assault posed by others, these cases clearly put the prison guard on notice that he violated the Eighth Amendment by personally sexually abusing the inmate.  *Id.* at 1196-98.

In 2012, the Ninth Circuit further expanded the scope of sexual abuse that violates the Eighth Amendment by shifting the focus to whether the challenged conduct served a legitimate penological purpose and was offensive to human dignity.  In *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012), the Ninth Circuit held that in determining whether the subjective prong of the Eighth Amendment claim was met, the question was whether there was a legitimate penological purpose for the prison official's conduct.  "[S]exual contact between a prisoner and a prison guard serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society.  Where there is no legitimate penological purpose for the prison official's conduct, courts have presumed malicious and sadistic intent."  *Id*. at 1050 (alterations, quotation marks and citations omitted).  The Ninth Circuit further held that in determining whether the objective prong of the Eighth Amendment claim was met, the only requirement was that the prison official's actions be offensive to human dignity.  *Wood*, 692 F.3d at 1050.

In *Wood*, the inmate alleged that a female prison guard sexually harassed him by cupping his groin on one occasion and on a separate occasion reaching her hand into his gym shorts and stroking his penis.  The inmate and the guard had previously been in a consensual relationship.  The Ninth Circuit acknowledged that "[t]he power dynamics between prisoners and guards make

14

it difficult to discern consent from coercion." *Wood*, 692 F.3d at 1048. In light of this troubling dynamic, the Ninth Circuit ruled that "[w]hen a prisoner alleges sexual abuse by a prison guard . . . the prisoner is entitled to a presumption that the conduct was not consensual. The state then may rebut this presumption by showing that the conduct involved no coercive factors." *Wood*, 692 F.3d at 1049.

Based on this rule, the Ninth Circuit reversed the district court's finding that guard's cupping of the inmate's groin did not violate the Eighth Amendment and remanded for a trial on the factual issues. *Id.* at 1046-68. With respect to the second interaction – the defendant reaching her hand into plaintiff's gym shorts and stroking his penis – the district court found that the touching did not violate the Eighth Amendment because it was not malicious and sadistic in that the guard had touched the inmate in an attempt to persuade him to resume the relationship, and because the inmate did not suffer specific psychological or physical harm. The Ninth Circuit found that the district court had applied the incorrect standard. The Ninth Circuit held that the district court erred when, in assessing the subjective prong of the Eighth Amendment claim, it focused on the guard's intent in determining whether his conduct was malicious, because courts must presume malicious and sadistic intent where there is no legitimate penological purpose for a prison official's conduct. *Id.* at 1050. The Ninth Circuit further held that the district court erred when, in assessing the objective prong of the Eighth Amendment claim, it required the inmate to provide evidence of injury, because the objective prong is met where the conduct is offensive to human dignity. *Id.* at 1050-51.[4]

In 2020, the Ninth Circuit again expanded the scope of an Eighth Amendment violation, holding that a guard's conduct violates the Eighth Amendment if it was done for the purpose of humiliating, degrading, or demeaning the prisoner: "a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or

---

[4] In *Wood*, the inmate styled the claim as one for "sexual harassment," 692 F.3d at 1045, and in places the court tracked that characterization, *see, e.g.*, *id.* at 1050. But the facts described make clear that, like *Schwenk*, *Wood* involved forcible sexual contact that the court characterized as "sexual abuse." *Id.* at 1049.

1    otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the

2    purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d

3    1130, 1144 (9th Cir. 2020).  In *Bearchild*, the inmate alleged that the prison guard had sexually

4    assaulted him during the course of a pat down search by patting him down for about five minutes,

5    and rubbing, stroking, squeezing, and groping in intimate areas during the search.  The inmate also

6    alleged that the guard ordered him to pull his waistband away from his body, stared at his penis,

7    and asked, "Is that all of you?"  The Ninth Circuit found that the jury instructions misstated the

8    law when they required the inmate to demonstrate that the guard had used excessive and

9    unnecessary force under all of the circumstances; acted maliciously and sadistically for the

10   purpose of causing harm and not in a good faith effort to maintain or restore discipline; and had

11   caused harm to the inmate.  *Id.* at 1145-49.

12          This case must also be considered in the context of the Prison Rape Elimination Act

13   ("PREA"), which was signed into law in 2003.  The PREA sets forth standards for eliminating

14   prison rape.  In relevant part, these standards defined sexual assault as "[a]ny . . . intentional

15   contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner

16   thigh, or the buttocks, that is unrelated to official duties . . ." or "[a]ny attempt, threat, or request to

17   engage in [such activity];" and defined sexual harassment as "[r]epeated . . . gestures of a sexual

18   nature to an inmate . . . by a staff member. . . , including . . . obscene language or gestures."  28

19   C.F.R. § 115.6 (effective on August 20, 2012).[5]

20               **2.     Analysis**

21          Defendant Ferguson argues that he did not violate the Eighth Amendment because the

22   plaintiff must establish that the alleged sexual harassment was egregious, pervasive, or widespread

23   in order to state a claim under the Eight Amendment, citing to *John-Charles v. Abanico*, No. C 07-

24   5786 CW (PR), 2010 WL 395930 at *9 (N.D. Cal. Feb. 1, 2010).  Defendant Ferguson cites to

25   cases from 1998, 2012 and 2014 to support his claim that "cupping [Plaintiff's] head and holding

26   it three-and-a-half or four inches from his groin . . . did not constitute an Eighth Amendment

27   _____

28   [5] The national standards for the PREA were adopted in 2012.  *See, e.g.*,
     https://bja.ojp.gov/sites/g/files/xyckuh186/files/media/document/PREA-Final-Rule.pdf

United States District Court
Northern District of California

violation, as such horseplay is not 'repugnant to the conscience of mankind.'" Dkt. No. 30 at 23.

Defendant Ferguson also argues that the alleged contact on August 26, 2019 did not violate the

Eighth Amendment because it lasted less than a minute, he did not make any sexual comments,

and he did not fondle or touch Plaintiff in a sexual manner.[6]  Dkt. No. 30 at 22-23.

As discussed above, sexual harassment and abuse jurisprudence has evolved in recent

Ninth Circuit cases, with the dispositive question being whether the alleged conduct was done for

the purpose of humiliating, degrading, or demeaning the prisoner, and not whether the sexual

harassment or abuse was egregious, pervasive, or widespread.  Viewing the record in the light

most favorable to Plaintiff, a jury could reasonably find that, on August 26, 2019, defendant

Ferguson touched Plaintiff in a sexual manner that was intended to humiliate or degrade him.

Although the contacts lasted less than a minute, were not accompanied by sexual comments, and

did not involve fondling or touching of genitals, the contacts were sexual in nature (with defendant

Ferguson persistently and forcibly pulling Plaintiff toward his groin and mimicking a sexual act),

Plaintiff resisted defendant Ferguson's touch and was unable to break free, Plaintiff expressed

discomfort after the encounters, defendant Ferguson laughed about the encounter afterwards,

defendant Ferguson deliberately attempted to repeat the action against Plaintiff's will, and Plaintiff

felt and expressed humiliation and fear.  Defendant Ferguson is not entitled to summary judgment

with respect to the Eighth Amendment claim arising from this incident unless he is entitled to

qualified immunity.

> **D.** **Qualified Immunity**

Defendant Ferguson argues that he is entitled to qualified immunity because he did not

violate Plaintiff's Eight Amendment rights and because it could not have been evident to a

reasonable person that his actions were unlawful.

Qualified immunity is an entitlement, provided to government officials in the exercise of

their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194,

200 (2001).  The doctrine of qualified immunity attempts to balance two important and sometimes

---

[6] Because the Court has granted summary judgment in favor of defendant Ferguson with respect to claim arising out of the March 22, 2020 incident, the Court does not reach the merits of that claim.

competing interests:  "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*  To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232.  Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.  To the extent that there are factual disputes regarding what the defendant actually did, at the summary judgment stage the Court must resolve those disputes in the plaintiff's favor in assessing whether the defendant's conduct violated a clearly established right.  *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (first prong of qualified immunity inquiry asks "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" (citing to *Saucier*, 533 U.S. at 201) (alterations in original).

Defendant Ferguson is not entitled to qualified immunity.  Accepting Plaintiff's version of the facts as true, as required at this stage, a jury could reasonably find that defendant Ferguson either sexually assaulted Plaintiff or attempted to sexually assault him.  Plaintiff was in a vulnerable position – bent down and with his back against a wall.  Defendant Ferguson forcibly grabbed the back of Plaintiff's head and mimicked a sex act while trying to force Plaintiff's face into his groin.  Plaintiff repeatedly resisted and defendant Ferguson maintained a grip strong

United States District Court
Northern District of California

1  enough to keep Plaintiff's face three to four inches from his groin for 30 to 45 seconds.  Plaintiff

2  was subjected to this forced contact that stimulated a sex act for that period.

3        The preexisting law was sufficient to provide defendant Ferguson with "fair warning" that

4  his conduct was unlawful.  *Schwenk* provided Plaintiff with fair warning that inmates had an

5  Eighth Amendment right to be free from sexual abuse: "In the simplest and most absolute terms,

6  the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly

7  established prior to [1993], and no reasonable prison guard could possibly have believed

8  otherwise."  *Schwenk*, 204 F.3d at 1197.  The Ninth Circuit held that the contours of prisoners'

9  Eighth Amendment right to be free from sexual abuse was so clearly established that "fair

10  warning" had been given even absent prior caselaw finding that the exact action in question was

11  unlawful.  *Id.* ("Where the law has provided the defendant with such fair warning, 'closely

12  analogous pre-existing case law is not required to show that the law is clearly established.'")

13  (quoting *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994)).  *Wood* provided Plaintiff with

14  fair warning that where the sexual contact between a prisoner and prison guard has no legitimate

15  penological purpose, malicious and sadistic intent must be presumed.  *Wood*, 692 F.3d at 1050.

16  And *Watison* is distinct from this case, because *Watison* involved a brief contact, i.e., the prison

17  guard rubbing his thigh against the inmate's thigh as the inmate sat on the toilet.  In contrast,

18  defendant Ferguson's actions, viewed in the light most favorable to Plaintiff, can reasonably be

19  viewed as sexual assault.  Plaintiff was trapped against a wall and restrained against his will for 30

20  to 45 seconds; defendant Ferguson had cupped the back of Plaintiff's head; defendant Ferguson

21  simulated oral copulation and tried to push Plaintiff's face into his groin; and defendant Ferguson

22  had no legitimate penological purpose for his actions.

23        Accepting Plaintiff's version of events as true, a jury could reasonably find that defendant

24  Ferguson sexually abused Plaintiff, and acted with sadistic and malicious intent.  At the time of

25  Defendant Ferguson's actions, it was clearly established that the Eighth Amendment prohibited

26  sexual abuse or sexual assault of inmates.  Defendant Ferguson is not entitled to qualified

27  immunity based on the record currently before the Court.

28  //

**CONCLUSION**

For the foregoing reasons, the Court orders as follows.

1.      The Court GRANTS defendant Ferguson's request for judicial notice of the Government Claim Form submitted by Plaintiff related to the August 26, 2019 incident (Claim No. 19008590), and of the November 1, 2019 rejection letter from the California Department of General Services in connection with Claim No. 19008590, attached as Exhibits A and B to defendant Ferguson's request for judicial notice.  Dkt. No. 30-1.

2.      The Court GRANTS defendant Ferguson's motion to dismiss the state law claims. The state law claims are DISMISSED with prejudice.

3.      The Court GRANTS defendant Ferguson's motion for summary judgment for failure to exhaust administrative remedies with respect to the Eighth Amendment claim arising out of the March 20, 2020 incident.  The Eighth Amendment claim arising out of the March 20, 2020 incident is DISMISSED without prejudice for failure to exhaust administrative remedies.

4.      The Court DENIES defendant Ferguson's motion for summary judgment with respect to the Eighth Amendment claim arising out of the August 26, 2019 incident.  Dkt. No. 30.

5.      The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program to address the remaining Eighth Amendment claim arising out of the August 26, 2019 incident.  Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit.  Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.  The Clerk is directed to serve Magistrate Judge Illman with a copy of this order and to notify Magistrate Judge Illman that a copy of the Court file can be retrieved from the Court's electronic filing database.

6.      In view of the referral, further proceedings in this case are hereby STAYED.  The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.  If the case is not settled, the Court will enter a new scheduling order for further proceedings.

1      This order terminates Dkt. No. 30.

2      **IT IS SO ORDERED.**

3   Dated:   3/14/2022

4                                                  _____
                                                    HAYWOOD S. GILLIAM, JR.
5                                                    United States District Judge